LAW OFFICES OF LEAH SAFFIAN
Leah Saffian Attorney at Law (SBN 121796)
15206 Ventura Blvd #306
Sherman Oaks, CA 91403
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HATTON GROUP LIMITED INC., a California Corporation; MH LIBYA GROUP FOR INVESTMENT AND JOINT SERVICES Inc., a California Corporation; MH LIBYA GROUP FOR INVESTMENT AND SERVICES, a Libyan Company; | No. 2:19-cv-02782-SVW-JPR |

Plaintiffs,

vs.

ROYAL ASSET MANAGEMENT ("RAM"), a UAE Sole Establishment ; ADAM UMERJI aka Shafiq Patel, an individual; CHRISTOPHER THORNE, an individual; MOHMED ZABIR AIYUB VADIA aka MOHMED ZABIR VADIA, an individual; SAJID PATEL, an individual; NASHEERA PATEL aka NASIRA PATEL, an individual; DESMAN DRIVER aka DEZMEN

FIRST AMENDED COMPLAINT FOR DAMAGES:

1) Breach of Contract (written)
2) Breach of Contract (written)
3) Conversion
4) Fraud
5) Conspiracy
6) RICO – 18 USCA §1961 et seq

Judge: Stephen V. Wilson

1  DRIVER, an individual; YASAAR al-
   HAMEDI aka YASAAR AL-HAMIDI, an
2  individual; DAVID ANTHONY LE
   VEQUE, an individual; SAHUL
3  INDUSTRIES HK LIMITED, a Hong
   Kong company;
4  SHEIKH SAQER BIN MOHAMED BIN
5  ZAYED ALNEHAYAN, aka SHAIKH
   SAQER MOHD ZAYED AL NEHAYAN;
6  SHEIKH SAQER MOHAMED ZAYED
   AL NAHYAN; SHEIKH SAQER;
7  SHEIKH SAQAR; SHEIKH SAQER
   MOHAMED ZAYED ALNEHYAN an
8  individual;
   CMA CGM AND ANL (NE) LLC
9  (DUBAI), aka CMA CGM; CMA CGM
10 GROUP, CMA CGM S.A., a UAE LLC;
   BANK OF CHINA (DUBAI) BRANCH,
11 aka BANK OF CHINA MIDDLE EAST
   (DUBAI) LIMITED; BANK OF CHINA
12 LIMITED, a DUBAI INTERNATIONAL
   FINANCIAL CENTRE (DIFC)
13 REGISTERED COMPANY;

14
                   Defendants
15

16  COME NOW PLAINTIFFS  MH LIBYA Group for Investment and Joint Services Inc and MH

17  LIBYA Group for Investment and Services, by and through their attorney of record Leah Saffian,

18  and for their Petition and Complaint for Breach of Written Contract, Conversion, Money

19  Laundering and Fraud and for Damages against Defendants, jointly and severally, they state to

20  the Court as follows:

21
                          FEDERAL DIVERSITY JURISDICTION
22

23    1.  Plaintiff HATTON GROUP LIMITED INC., a California Corporation (hereinafter

24        "HATTON") is a corporation organized and existing under the laws of the State of

25        California with its principal place of business in the City of Orange, California. For the

26        purposes of diversity, Plaintiff is a citizen of California. (See U.S.C. §1332(a) (2).

27
      2.  Plaintiff MH LIBYA GROUP FOR INVESTMENT AND JOINT SERVICES Inc
28

(hereinafter "MHL CA" ) is a corporation organized and existing under the laws of the State of California with its principal place of business in the City of Orange, California. For the purposes of diversity, Plaintiff is a citizen of California. (See U.S.C. §1332(a) (2).

3. Plaintiff MH LIBYA GROUP FOR INVESTMENT AND SERVICES (hereinafter "MHL Libya") is a company organized and existing under the laws of the Country of Libya with its principal place of business in the city of Benghazi. For the purposes of diversity, Plaintiff is a citizen of Libya. (See U.S.C. §1332(a) (2)).

4. Defendant Royal Asset Management (hereinafter "RAM") is a company organized and existing under the laws of the United Arab Emirates with its principal place of business in the city of Dubai. For the purposes of diversity, Plaintiff is a citizen of the United Arab Emirates. (See U.S.C. §1332(a) (2)).

5. Defendant ADAM UMERJI aka Shafiq Patel (hereinafter "UMERJI") is an individual and a citizen of the United Kingdom. (See U.S.C. §1332(a) (2)).

6. Defendant CHRISTOPHER THORNE (hereinafter "THORNE") is an individual and a citizen of the United Kingdom. (See U.S.C. §1332(a) (2)).

7. Defendant MOHAMMED ZABIR AIYUB VADIA aka MOHMED ZABIR VADIA (hereinafter "VADIA") is an individual and a citizen of the United Kingdom. (See U.S.C. §1332(a) (2)).

8. Defendant SAJID PATEL (hereinafter "PATEL") is an individual and a citizen of the United Kingdom. (See U.S.C. §1332(a) (2)).

9. Defendant DESMAN DRIVER aka DEZMEN DRIVER (hereinafter "DRIVER"), is an individual, a resident of United Arab Emirates and a citizen of the India. (See U.S.C. §1332(a) (2)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10. Defendant YASAAR al-HAMEDI aka YASAAR AL-HAMIDI (hereinafter "HAMEDI") is an individual and a resident or citizen of the United Arab Emirates. (See U.S.C. §1332(a) (2)).

11. Defendant DAVID ANTHONY LE VEQUE (hereinafter, "LE VEQUE") is an individual and a citizen of California, the United States of America. (See U.S.C. §1332(a) (2)).

12. Defendant SAHUL INDUSTRIES HK LIMITED (hereinafter ("SAHUL"), is a Hong Kong company organized and existing under the laws of Hong Kong with its principal place of business in the city of Hong Kong Central. For the purposes of diversity, Plaintiff is a citizen of Hong Kong, Hong Kong Special Administrative Region of the People's Republic of China (See U.S.C. §1332(a) (2)).

13. (DELETED)

14. Defendant SHEIKH SAQER BIN MOHAMED BIN ZAYED AL NEHAYAN, aka SHAIKH SAQER MOHD ZAYED AL NEHAYAN; SHEIKH SAQER MOHAMED ZAYED AL NAHYAN; SHEIKH SAQER; SHEIKH SAQAR; SHEIKH SAQER MOHAMED ZAYED ALNEHYAN (hereinafter "SHEIKH") is an individual and a citizen of the United Arab Emirates. (See U.S.C. §1332(a) (2)).

15. Defendant CMA CGM AND ANL (NE) LLC (DUBAI), aka CMA CGM; CMA CGM COMPANY, CMA CGM GROUP; CMA CGM S.A. (hereinafter "CMA CGM") is an LLC and a citizen of United Arab Emirates and the United States. (See U.S.C. §1332(a) (2)).

16. Defendant BANK OF CHINA (DUBAI) BRANCH, aka BANK OF CHINA MIDDLE EAST (DUBAI) LIMITED; BANK OF CHINA BEIJING (HEAD OFFICE); BANK OF CHINA LIMITED,  (hereinafter "BOC") is a Dubai International Financial Center registered company and a citizen of United Arab Emirates and citizen of People Republic of China. (See U.S.C. §1332(a) (2)).

17. Diversity Jurisdiction under 28 U.S.C. §1332(a) (2) requires that Plaintiffs citizenship be diverse from the defendant's citizenship.

18. Diversity of citizenship is present in the instant case because Plaintiffs are citizens of California and Libya and Defendant's are citizens of the United Kingdom, the United Arab Emirates, Hong Kong Special Administrative Region of the People's Republic of China and the United States. 28 U.S.C. §1332(a) (2)

19. For Relief, Plaintiffs seek damages in excess of Seventy-Five Thousand United States Dollars (US$ 75,000) on each count. 28 U.S.C. §1332(a).

*20.* This Court has original jurisdiction over this action under the provisions of 28 U.S.C. §1332 as this is a civil action between citizens of *"…(a)(2) citizens of a State and citizens or subjects of a foreign state…" 28 U.S.C. §1332(a) (2)* in which the amount in controversy exceeds the sum of Seventy-Five Thousand United States Dollars (US$ 75,000) inclusive of interest and costs.


## AVERMENTS COMMON TO ALL COUNTS


21. Plaintiff HATTON is and was at all times the majority shareholder of MHL LIBYA.

22. On or about April 5th, 2019 Plaintiff MHL LIBYA transferred all of its debt to Plaintiff MHL CA.

23. On or about 28th. January 2015 the MHL LIBYA without notice to or consent of its CEO or HATTON its majority shareholder, entered into a Contract #1 wherein RAM agreed to supply medical equipment to MHL LIBYA in exchange for US$ 20 million
Contract No.: RAM/MH/78629 (Exhibit 1)

24. On or about 20th. January 2015 MHL LIBYA without notice to or consent of its CEO or HATTON its majority shareholder, entered into a Contract #2 wherein RAM agreed to supply medical equipment to MHL LIBYA in exchange for Euro €s €23,995,000
Contract No.: RAM/MH/78646 (Exhibit 2).

25. RAM is a sole establishment company owned 100% by Defendant SHEIKH (Exhibit 5).

26. These Contracts No 1 and No2 were executed by VADIA for RAM and LE VEQUE for MHL LIBYA.

27. MHL LIBYA issued two irrevocable Letters of Credit (hereinafter"L/C") corresponding respectively to Contract No. 1 and Contract No.2, L/Cs 98L/C450001 and 10/61/LC00006/15 respectively. (EX 1 and EX 2)

28. L/C #1 for US $ 20,000,000 was credited to RAM's bank accounts on April 16, 2015. (EX1 Page 9 and Page 23)

29. L/C #2 for Euro €s €23,995,000 was credited to RAM's bank accounts on June 21, 2015. (EX 2 Page 9).

30. Delivery of the medical supplies was scheduled for arrival to Tobruk on or about April 30th, 2015.

31. The medical supplies never arrived (Exhibit 3).

32. The contents of Bills of Lading (hereinafter "B/L") from CMA CGM for both shipments were fraudulently declared as to contain the "Goods as per Invoice No. RAM/MH/01343"and "Goods as per Invoice No. RAM/MH/01342" in order to cash the Letter of Credit. In reality, the contents were mattresses. The 2 B/Ls, specifically Bills of Lading numbers DXB0271920B and DXB0271920A) are from CMA CGM. (Ex 1 Pages 15,16,17 and Ex 2 Pages 10, 11)

33.  False documents were provided by SAHUL in collusion with RAM, with the intent to defraud MHL Libya by appearing to show that RAM had purchased the medical equipment from Hong Kong. This was a sham which was later discovered when the containers were opened by CMA CGM in the presence of Malta Freeport Security around Nov 2015 and found to contain mattresses. (Ex 3 Page 2).  SAHUL conspired with SHEIKH, UMERJI, THORNE, VADIA, PATEL, DRIVER, HAMEDI and LEVEQUE to defraud MHL Libya.

34. On Mar 23, 2015 the cargo purchased by MHL Libya from RAM were loaded onboard

vessel M/S CMA CGM TOSCA and the Bills of Lading (B/L) DXB0271920A and DXB0271920B were issued on the same date. (Ex 1 Pages 15,16 and Ex 2 Pages 10, 11).

35. On April 16, 2015 RAM was paid approximately US$20 million for the shipment under B/L DXB0271920A (Ex 1/Pg 9).

36. On June 21, 2015 RAM was paid approximately EUR24 million for the shipment under B/L DXB0271920B (Ex 2/Pg 9).

37. Both shipments should have arrived at the destination port, Tobruk around the end of April 2015 or sometime in May 2016, but they did not arrive.

38. A letter from Sallah El Nagar of MHL Libya was sent to CMA CGM on Aug 27, 2015 requesting the status of the shipments. (Ex 9 Page 2).

39. On Aug 30, 2015, an email was sent to CMA CGM formally requesting the status of the shipments which should have arrived 3 months earlier. (Ex 9/Pg 1)

40. On Sept 1, 2015 CMA CGM replied saying the shipment of MHL cargo was on hold in Malta upon shipper (RAM) request. CMA CGM's action to hold the cargo was illegal and fraudulent as RAM had already been paid in full. CMA CGM did not request RAM to produce the original B/Ls which would have established that RAM was no longer the owners of the shipments under the 2 B/Ls. Instead CMA CGM conspired dishonestly with RAM to hold the cargo in Malta in order to defraud MH Libya. Once RAM surrendered the B/Ls to BOC and negotiated the Letters of Credit payments , the title to the cargo had already transferred to MHL Libya.

41. For approximately 9 months (Aug 2015 to May 2016), CMA CGM staff provided evasive answers regarding the status and location of the containers in the shipments (Ex 9) in collusion with RAM, with the intent to defraud MHL Libya by deliberately preventing MHL Libya from discovering the fraud.

42. On May 1, 2016, Ms Geeta Manoj on behalf of Claude Lebel, finally send an email providing the exact status of the containers and confirming that fake cargos were found inside the containers and fraud have been committed by RAM. (Ex 9/Pg 13).

43. If CMA CGM had not illegally held the shipments in Malta, MHL Libya would have received the shipments on April/May 2015 in Tobruk and stopped or prevented the negotiation of the L/C's at BOC.

44. The fraud by RAM against MHL Libya would have been discovered in April/May 2015 instead of on May 1, 2016, almost a year later. This action by CMA CGM has limited MHL Libya's recourse in recovering the funds stolen by RAM due to passage of time.

45. If the shipments had arrived on April/May 2015, MHL Libya would have informed its issuing banks to withhold disbursement of funds, especially the EUR € 24 million L/C which was paid out on June 21, 2015, after the date the shipments were to have arrived Tobruk.

46. On Feb 7, 2016, MHL Libya filed a legal complaint against RAM in Dubai, UAE with Excel Advocates & Legal Consultants, but the case was dropped/dismissed as MHL Libya could not prove, at the time of the legal filing, of the fraud committed by RAM. This is because only on May 1, 2016 did CMA CGM confirm the fraud by revealing that mattresses were found in the containers rather than the medical equipment that had been specified. (Ex 10)

47. On May 1, 2016 the shipping company CMA CGM reported that on April 22, 2015 the booking party Ahoran Logistics on behalf of RAM asked to hold the containers while in transit at the port of Malta and that the shipper RAM did not wish the container to proceed to Tobruk. This was in express violation of the terms of the Bills of Lading and of the Letters of Credit. Instead, CMA CGM reported that the shipper RAM wanted these shipping containers recalled back to the Port Jebel Ali, UAE. (EX 3)

48. When the shipping containers were subsequently opened in Malta by the shipping line, CMA CGM, they were found not to contain medical supplies in accordance to the packing list and invoices submitted to CGM CGM and customs, but rather useless mattresses under the brand of Royal Rest-Alpha Med.

49. Not only did RAM and CMA CGM fraudulently stop the containers from being delivered

to Tobruk Libya thereby preventing the timely discovery of the fraud such that Plaintiffs could have stopped payment or prevented the negotiation of the L/C's; the content of the containers were mattresses that did not conform to the medical supplies for which the parties contracted nor the goods itemized in the Bills of Lading supplied by RAM, SHEIKH, UMERJI and purportedly from SAHUL (EX 1 Pages 11-13 and Page 18-20.)

50. The documents supplied by RAM to MHL LIBYA and the customs authorities were false and forged. (EX 1 pages 12- 20)

51. MHL LIBYA demanded by letter the return of the funds from the operators of RAM. (Exhibit 4)

52. (DELETED)

53. On Sept 5, 2015, Mr Al Jelani AL Ferjani wrote a letter to UMERGI stating and complaining that the medical goods were never received. (EX 4)

54. The funds were never refunded and the medical goods were never supplied by RAM to MHL LIBYA.

55. On or around June 15, 2015, LE VEQUE executed a false and or forged document stating that the goods had been received. (Ex 8). This was impossible as the containers were held in Malta between April 22, 2015 and March 2016. (Ex 4). The containers never arrived at Tobruk for Le Veque to conduct and subsequently state that the goods had been inspected. (Ex 8)

56. In fact, the containers were opened by the shipping company CMG CGM in Malta with Malta Freeport Security and when opened they were discovered to contain useless mattresses.

57. On Feb 12, 2015 a US$20 million L/C was issued to RAM by MH Libya bank, Wahda Bank, Libya. (Ex 1/6). The L/C clearly stated "MEDICAL EQUIPMENT SUPPLIES CONSUMABLES AND PROFESSIONAL SERVICES" as the description of goods (Ex 1/page 7)

58. The US$20 million L/C required an Inspection Certificate issued by MH Libya as part of

the required documents for the negotiation of the L/C .

59. On Jan 27, 2015 a Euro  € 24 million Letter of Credit was issued to RAM by MH Libya's
bank, Bank of Commerce and Development, Libya. (Ex 2/6). The L/C clearly stated,
"MEDICAL EQUIPMENT SUPPLIES CONSUMABLES AND PROFESSIONAL
SERVICES" as the description of goods (Ex 2/page 7)

60. The Euro  €24 million L/C required the goods to be of UAE origin, BUT there was no
requirement for certification from a third party inspection company which is a red flag.
(Ex 2/ Page 7). Such goods are not manufactured in the UAE.

61. RAM was using BOC in Dubai for the negotiation of payments after shipments for these
2 Letters of Credit. (Ex 10)

62. BOC has a copy of the 2016 RAM's Professional License that showed that it was for real
estate transactions only, and did not have license to supply medical equipment and yet
BOC accepted these L/Cs. (Ex 10/ Page 6)

63. BOC was aware that the Euro € L/C is deficient as it did not require third party inspection
which allowed this fraud to be perpetrated on MH Libya. (Ex 2/Page  7)

64. BOC was aware that both L/Cs stated medical equipment must be of UAE origin, but
knew that no company in the UAE produces such equipment. Even though the US$20
million L/C had an amendment to rectify this, the Euro € 24 million L/C did not have any
amendment to address this.

65. BOC colluded with RAM by ignoring to do the required KYC (know your customer) due
diligence on RAM.

66. On March 24, 2015 both B/Ls were submitted to BOC for payment against the L/Cs (Ex
10/Page )

67. BOC colluded with RAM by accepting the RAM Professional License, B/L, invoices,
packing list and fake UAE certificate of origin.

68. BOC accepted a fake Inspection Certificated purportedly from MHL Libya with date of
issue of Feb 17, 2014 which is before shipment date. (Ex 10/Page 7).

69. On April 6, 2015, BOC sent an authenticated SWIFT message to its head office, Bank of China Beijing. (Ex 10/Page 3).

70. Bank of China Beijing did not stop the transaction even though it was laced with frauds that were apparent on the face of the documents.

71. Also, on April 6, 2015, BOC send a SWIFT message to Arab Bank for Investment and Foreign Trade Abu Dhabi disputing the discrepancies in the claims allowing payment to RAM. (Ex 10/ Page 2)

72. On April 21, 2019, MHL Libya sent a letter to RAM to cancel the Euro € 24 million L/C as it was not paid out at that time, but BOC ignored that cancellation notice. (Ex 10/ Page 5)

COUNT 1 – BREACH OF CONTRACT (WRITTEN)

TRANSACTION OF JANUARY 28 2015

LETTER OF CREDIT US $20,000,000

Against All Defendants

COME NOW PLAINTIFFS  HATTON GROUP LIMITED INC; MH LIBYA Group for Investment and Joint Services Inc and; MH LIBYA Group for Investment and Services, by and through their attorney of record Leah Saffian,  and for their Petition and Complaint for Breach of Written Contract, Conversion, RICO Money Laundering and Fraud and for Damages against Defendants, jointly and severally, they state to the Court as follows:

73. PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-72 of its complaint and petition as if fully set forth in full hereafter.

74. Despite having received payment in full for the full contract price pursuant to written contract , Defendants failed to procure, ship and deliver the medical goods pursuant to the terms of contract No 1, dated Jan 28, 2015.

75. Defendants have failed and refused to remedy their Breach of Contract and as a result Plaintiffs MHL LIBYA suffered damages in that they have lost revenue and remain indebted to the party to whom they were obligated to refund the monies advanced namely the party that deposited the $ 47 million with MHL Libya. The trading reputation of MHL LIBYA has been damaged and MHL Libya has been barred from doing business in Libya as a result of the fraudulent conduct of Defendants.

76. Plaintiff MHL LIBYA has lost revenue in excess of US $47 million related to not receiving the product for which it had already paid. It is entitled to have received the product and/or receive a full refund of sums paid for said product.

77. Plaintiffs have been damaged by the actions of Defendants, jointly and severely.

WHEREFORE, Plaintiffs pray for an order of this Court on Count 1 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their breach of contract in the amount of US $47 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

### COUNT 2 – BREACH OF CONTRACT (written)

TRANSACTION OF JANUARY 20 2015
LETTER OF CREDIT  Euro € 23,995,000
Against All Defendants

COME NOW PLAINTIFFS  HATTON GROUP LIMITED INC.; MH LIBYA Group for Investment and Joint Services Inc and; MH LIBYA Group for Investment and Services, by and through their attorney of record Leah Saffian  and for their Petition and Complaint for Breach of Written Contract, Conversion, and Fraud and for Damages against Defendants, jointly and severally, they state to the Court as follows:

78. PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-77 of its

complaint and petition as if fully set forth in full hereafter.

79. Despite having received payment in full for the full purchase price pursuant to written contract No 2 dated 20 January 2015 (EXHIBIT 2) Defendants failed to procure, ship and deliver the medical goods pursuant to the terms of contract.

80. Defendants have failed and refused to remedy their Breach of Contract and as a result Plaintiffs MHL LIBYA suffered damages in that they have lost revenue and remain indebted to the party to whom they were obligated to supply medical goods and the party that deposited the $ 47 million with MHL Libya. There trading reputation has been damaged and MHL Libya was banned from doing business in Libya.

81. Plaintiff MHL Libya has lost revenue in excess of Euro €s €23,995,000 million (approximately US$26,933,438.10) related to not receiving the product for which it had already paid and it was entitled to receive the product and/or receive a refund of sums paid for said product.

82. Plaintiff MHL LIBYA is obligated to repay Euro €23,995,000 million to the party who contracted for the medical supplies.

83. Plaintiffs have been damaged by the actions of Defendants, jointly and severely.

WHEREFORE, Plaintiffs pray for an order of this Court on Count 2 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their breach of contract in the amount of Euro €23,995,000 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

Count 3 FRAUD

Against Defendants
RAM, CMA CGM, BOC, SAHUL, LEVEQUE,
UMERJI, THORNE, DRIVER, HAMEDI AND VADIA

COME NOW PLAINTIFFS  HATTON GROUP LIMITED INC.; MH LIBYA Group for Investment and Joint Services Inc and; MH LIBYA Group for Investment and Services, by and through their attorney of record Leah Saffian  and for their Petition and Complaint for Breach of Written Contract, Conversion, and Fraud and for Damages against Defendants, jointly and severally, they state to the Court as follows:

84. PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-83 of its complaint and petition as if more fully set forth in full hereafter.

85. When demand was made for the return of funds for the over US$47 million paid in full as US$ 20 million and Euro €23,995,000 million pursuant to their contract for the delivery of the medical goods; Defendants forged documents and made dishonest and false representations through forged and false bills of lading inventories, forged and false customs declarations, forged and false licenses, forged and false stamps, false Certificates of Origin (EX 6), False Certificates of Inspection (Ex 8 and Ex 10/Page 7), and a forged Dubai Public Prosecution report (EX 7)

86. Defendants were successful in gaining control over the US$47 million paid in full as US$ 20 million and Euro €s €23,995,000 million.

87. Defendants gained control over these funds through a web of dishonesty including misrepresentation, forged documents and false statements in written and verbal form.

88. Defendants had no legal right to these monies having failed to supply the medical goods and having behaved dishonestly.

89. Defendants have failed and refused to remedy their Breach of Contract and acted dishonestly to obtain control over approximately $47 million that belonged to another and as a result Plaintiffs MHL LIBYA suffered damages in that they have lost revenue and remain indebted to the party to whom they were obligated to supply medical goods and to the party that deposited the $ 47 million with MHL Libya for the procurement of medical supplies. Plaintiffs trading reputation has been damaged for taking money and failing to

supply goods as a result of the actions of Defendants.

90. Plaintiff MHL LIBYA has lost revenue in excess of Euro €23,995,000 million (approximately US$26,933,438.10) related to not receiving the product for which it had already paid through deceit dishonesty and subterfuge. It was entitled to receive the product and/or receive a refund of sums paid for said product.

91. Plaintiff MHL LIBYA is obligated to repay Euro €s €23,995,000 million to the party who contracted for the medical supplies.

92. Plaintiffs have been damaged by the actions of Defendants, jointly and severely.

WHEREFORE, Plaintiffs pray for an order of this Court on Count 3 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their Fraud in the amount of US $ 47 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

COUNT 4 – CONVERSION

US$47 million as US$ 20 million pursuant to

L/C number 98L/C450001 and Euro €23,995,000 million pursuant to

L/C number 10/61/LC00006/15

AGAINST DEFENDANTS RAM, SHEIKH, UMERJI, THORNE, PATEL, DRIVER, VADIA, HAMEDI

COME NOW PLAINTIFFS  HATTON GROUP LIMITED INC.; MH LIBYA Group for Investment and Joint Services Inc and; MH LIBYA Group for Investment and Services, by and through their attorney of record Leah Saffian, and for their Petition and Complaint for Breach of Written Contract, Conversion, and Fraud and for Damages against Defendants, jointly and severally, they state to the Court as follows:

93. PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-92 of its complaint and petition as if more fully set forth in full hereafter.

94. Defendant's unlawfully took control of, to the exclusion of PLAINTIFFS, US$47 million as US$ 20 million pursuant to L/C number 98L/C450001 and Euro €s €23,995,000 million pursuant to L/C number 10/61/LC00006/15without having fulfilled the obligations of the contract namely to supply the medical goods.

95. Plaintiffs did not consent to Defendants taking control and custody of the monies particularlized above;

96. Plaintiffs were harmed as a result of Defendants unlawful taking of the US $47 million in that Plaintiffs were unable to meet their obligations to its customer by either supply medical supplies or return the monies; and

97. Defendant's SHEIKH, RAM, UMERJI, THORNE, VADIA, PATEL, DRIVER, HAMEDI's conduct in wrongfully taking US $47 million was a substantial factor in causing harm to Plaintiffs HATTON, MHL LIBYA and MHL CA.

98. WHEREFORE, Plaintiffs pray for an order of this Court on Count 4 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their Conversion in the amount of US$47 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

COUNT 5 –
CONSPIRACY TO DEFRAUD US$47 million from Plaintiff
Against Defendants SAHUL, RAM, CMA CGM, BOC, SHEIKH,
UMERJI, THRONE, VADIA PATEL, DRIVER, HAMEDI AND LE VEQUE

99. PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-98 of its complaint and petition as if more fully set forth in full hereafter.

100.    At the behest of RAM and in a dishonest agreement with SAHUL, false documents were provided by SAHUL, representing that medical equipment and supplies were purchased by RAM from SAHUL for supply to and to defraud MHL Libya. SAHUL dishonestly conspired with SHEIKH, UMEJI, THORNE, VADIA, PATEL, DRIVER, HAMEDI and LEVEQUE. (EX 1 Page11-15).

101.    At the behest of RAM and in a dishonest agreement with CMA CGM, the shipments were illegally held in Malta after RAM has been paid in full to prevent MHL Libya from discovering that fraudulent cargo was in the containers to perpetuate the fraud. CMA CGM dishonestly conspired with SHEIKH, UMERJI, THORNE, VADIA, PATEL, DRIVER, HAMEDI and LEVEQUE. (Ex 9)

102.    BOC dishonestly conspired with RAM in accepting and negotiating the Letters of Credit. (Ex 10).

WHEREFORE, Plaintiffs pray for an order of this Court on Count 5 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their Fraud in the amount of US $ 47 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

COUNT 6 – RICO of 1970 18 U.S.C.A. §1961 et seq.

Against RAM, CMA CGM, BOC, SHEIKH, UMERJI, THRONE, VADIA PATEL, DRIVER, HAMEDI AND LE VEQUE

103.    PLAINTIFFS restate and re-allege all averments contained in paragraphs 1-102 of

its complaint and petition as if more fully set forth in full hereafter.

104.     Defendants have received money and benefitted from a pattern of dishonest racketeering activities that include organized complex criminal enterprises in multiple jurisdictions. The money was invested in a dishonest enterprise namely defendant RAM. The dishonest enterprise affected interstate commerce namely a fraudulent use of the wires, banking documents, swifts in the United States and abroad (Ex 1/9). Plaintiffs were injured as a result of the investment of racketeering income.

105.     The dishonest racketeering activities of Defendants include use of counterfeit documents; embezzlement, fraudulent identification documents, wire fraud, financial institution fraud, money laundering, intimidation or coercion of governments and the obstruction of justice and criminal investigations in multiple jurisdictions.

106.     Plaintiffs have suffered injury and damage as a result of the dishonest racketeering activities of the Defendants including but not limited to loss of reputation, ban from trading in multiple jurisdictions for failure to return the monies or deliver the goods, loss of US$47 million.

WHEREFORE, Plaintiffs pray for an order of this Court on Count 6 of its petition granting Plaintiff judgment against Defendants, jointly and severely, for their Fraud in the amount of US $ 47 million as and for damages and for an award of Plaintiffs attorney fees and costs payable by Defendants, all of them, and or such other and further orders as this court deems just and proper under the circumstances.

Date: July 22, 2019                              *Leah Saffian (SBN 121796)*
                                                 _____
                                                 LEAH SAFFIAN (SBN 121796)
                                                 Attorney at Law/ Barrister